# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　Plaintiff,<br>vs.<br>Michael William McKerlie,<br>　　　　Defendant. | CR 10-1783-TUC-FRZ (JCG)<br><br>REPORT AND RECOMMENDATION |

Defendant Michael McKerlie faces charges of Distribution of Child Pornography and Possession of Child Pornography. (Doc. 1.) The charges stem from an investigation initiated by the Federal Bureau of Investigation (FBI) after one of its agents identified the Defendant as an individual allegedly sharing child pornography through the internet. Unbeknownst to the FBI agent, another federal agency, Immigration and Customs Enforcement (ICE) had recently investigated the Defendant for the same offenses. No child pornography was discovered by ICE agents during their search. When the FBI applied for a search warrant for Defendant's residence, the Magistrate Judge was not informed of the fact of ICE's investigation, including ICE's prior search of Defendant's house and computer.

Defendant brought a Motion to Suppress Evidence seized by the FBI in the execution of its search warrant on the grounds that the magistrate judge would not have issued the warrant, knowing that a prior search failed to produce any evidence of possession or distribution of child pornography. (Doc. 15.) In his Motion, Defendant requested a *Franks* hearing to determine if the FBI "knew or more importantly should have known of the contemporaneous ICE investigation." (*Id.*) The Defendant also filed a Motion to Suppress or Exclude Statement. (Doc. 16.)[1]

---

[1] The Motion to Suppress Statement remains pending.

After the Motions were fully briefed, they were set for hearing on March 10, 2011. Two days before the hearing, the Defendant moved to continue, stating that "additional time was necessary to resolve legal issues in an attempt to simply [sic] the motions hearings" and because of a possibility of resolving the case without the necessity of a hearing on the motions. (Doc. 21.) The request for continuance was unopposed. The Magistrate granted the request, vacated the hearing, and ordered that the parties contact chambers to reset the hearing sufficiently before the trial date to allow time for a Report and Recommendation to be prepared. (Doc. 23.)

On March 28, 2011, the Defendant filed a Motion for Additional Disclosure, seeking among other things, the name of the Assistant United States Attorney (AUSA) who consulted with the ICE agents regarding the "knock and talk" search at Defendant's home. (Doc. 25.) At a hearing on April 13, 2011, the Defendant argued that what took place at the United States Attorney's office is relevant to determine if that office was aware of the prior search by ICE and, if not, why not. Both parties argued the disclosure issue in relation to the Motion to Suppress Evidence. After the hearing, the Magistrate took the matter under advisement.[2]

Determining whether the Defendant is entitled to disclosure of the AUSA's identity requires consideration of the Defendant's Motion to Suppress, as indicated by the parties at argument. The issues are inextricably intertwined. To determine whether to grant the Defendant's request for the disclosure, the Magistrate Judge must consider whether the requested information is relevant to resolution of the Motion to Suppress. Thus, this Report and Recommendation necessarily address both the Motion for Additional Disclosure and the Defendant's Motion to Suppress Evidence.

//

---

[2] The Motion for Additional Disclosure sought three items: (1) a written summary of any expert testimony to be used by the government in its case in chief; (2) reports relating to the examination of the defendant's computer; and (3) the name of the AUSA who consulted with the ICE agents. (Doc. 25.) Item 2 was resolved at the hearing. The request for disclosure of the AUSA's identity is addressed in this Report.

**BACKGROUND**

There is no dispute as to the following relevant facts.

**A.      The ICE Investigation**

ICE began investigating the Defendant in April 2007 and the investigation continued for more than three years, ending on May 28, 2010. On April 15, 2009, ICE agents interviewed Defendant at his home regarding information obtained by ICE indicating that, in 2006 and 2007, Defendant had purchased subscriptions to child pornography websites using his credit card. During the April 15, 2009 interview, Defendant denied any involvement with child pornography. Defendant gave the ICE agents permission to examine two computers that were in his possession. ICE Special Agent (SA) John Owen conducted an on-site forensic examination of these two computers; the examination did not reveal any child pornography images. Defendant also told the ICE agents during the interview that he owned an additional laptop computer but had disposed of it approximately two weeks prior to the April 15, 2009 interview.

After the April 15, 2009 interview, an ICE Special Agent informed the Defendant's supervisor that ICE had concluded its investigation. The supervisor told the ICE agent that he had revealed the ICE investigation to the Defendant prior to ICE's April 15, 2009, interview of Defendant and examination of the Defendant's computer at Defendant's house. The ICE agent told the supervisor that this may have caused the Defendant to destroy evidence.

**B.      The FBI Investigation**

On March 23, 2009, Federal Bureau of Investigation (FBI) Special Agent (SA) Michelle Terwilliger, acting in an undercover capacity, was using the LimeWire peer to peer file sharing application to identify individuals sharing child pornography over the internet. SA Terwilliger allegedly connected with Defendant online and downloaded ten image files from Defendant, all of which constituted child pornography. Subsequent investigation identified the Defendant through internet service provider subscriber information, and it was

1  determined that Defendant was in Tucson, Arizona at the time the child pornography files
2  were made available for download.

3  SA Terwilliger provided the information obtained from her online investigation to FBI
4  SA Eric Campbell. On August 3, 2009, SA Campbell obtained a search warrant for
5  Defendant's residence from Magistrate Judge Charles R. Pyle. The search warrant was
6  executed by FBI agents on August 7, 2009. At the time of the search, agents seized
7  Defendant's computer, a Gateway GM5472 desktop computer. The FBI subsequently
8  conducted a full forensic examination of Defendant's computer hard disk drive; the
9  examination revealed 14 still image child pornography files depicting minors engaging in
10 sexually explicit conduct, including depictions of sadistic and masochistic conduct.

11 During the execution of the warrant, the Defendant told FBI agents that he had
12 previously been interviewed by ICE agents regarding child pornography. Prior to the August
13 7, 2009 interview with Defendant, the FBI agents were not aware of any investigation by ICE
14 involving Defendant. After learning of the ICE investigation from Defendant, SA Campbell
15 contacted the Tucson ICE office, which confirmed ICE's previous investigation.

16 AUSA Angela Woolridge was the attorney who authorized the FBI's application for
17 a search warrant regarding Defendant's premises and computer. She was not aware of the
18 prior ICE investigation of Defendant. After inquiry, Ms. Woolridge learned that a different
19 AUSA had been working with ICE on its investigation. No file had been opened because no
20 images of child pornography had been discovered in the on-site preview of Defendant's
21 computer. Ms. Woolridge had not discussed the FBI investigation of Defendant with the
22 other AUSA prior to the FBI's search warrant application.

23 Defendant was indicted on July 21, 2010 for one count of Distribution of Child
24 Pornography and one count of Possession of Child Pornography.

## ANALYSIS

**A.     Motion to Suppress Evidence**

27 In his Motion to Suppress Evidence, Defendant challenges the admissibility of the
28 evidence obtained from his computer by the FBI on the ground that the search warrant

omitted the material information that ICE had previously searched Defendant's computers and found no child pornography. Defendant asserts that had Magistrate Judge Pyle been aware of the "totality" of the federal investigations and the previous examination of the computer, he would not have found probable cause for issuance of the search warrant. Defendant seeks a *Franks* hearing to demonstrate that the omitted information was material to the probable cause determination.

A defendant is entitled to challenge a search warrant "upon a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the [search warrant] affidavit from being misleading." *United States v. Whitworth,* 856 F.2d 1268, 1280 (9th Cir. 1988). Where a defendant makes a substantial preliminary showing that a false statement "knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* There is a presumption of validity with respect to the affidavit supporting the search warrant. *Id.* at 171.

  *1. Knowing and intentional or reckless omission*

In the present case, Defendant has failed to make the substantial preliminary showing that the affiant "knowingly and intentionally, or with reckless disregard for the truth" omitted facts required to prevent the statements in the affidavit from being misleading. There is no indication that SA Campbell committed perjury or acted with reckless disregard for the truth when he did not include the fact of ICE's prior examination of the computer in his application for a search warrant of the same computer. In fact, Defendant does not contend that FBI SA

Campbell knew about the ICE investigation or its earlier search of the Defendant's computer. Defendant concedes as much when he suggests that the FBI "should have known" about the ICE investigation or made some effort to determine whether other federal investigative agencies were also investigating the Defendant for child pornography.

Defendant cites *United States v. DeLeon*, 979 F.2d 761 (9th Cir. 1992), in support of the proposition that SA Campbell's lack of knowledge about the ICE investigation is not controlling. *DeLeon*, however, is factually inapplicable. In *DeLeon*, one investigating agent knew exculpatory information and purposely withheld it from the agent whose affidavit supported the warrant. The court concluded that police cannot insulate one officer's deliberate misstatements or omissions merely by relaying it through an officer-affiant personally ignorant of its falsity. In the present case, there is no evidence that any of the agents involved in the FBI's investigation knew about the ICE investigation. And as the Court made clear in *Franks*, allegations of negligence or innocent mistake are insufficient grounds from which to void a search warrant. *Franks*, 438 U.S. at 171.[3]

In requesting the identity of the AUSA who worked with ICE during the first investigation, Defendant seeks to extend the *Franks* disclosure obligation to attorneys involved in search warrant applications. Defendant requests the name of the AUSA who was aware of the ICE investigation to determine whether the AUSA who worked with ICE communicated to the AUSA who approved the FBI search warrant, that ICE had previously investigated Defendant and examined his computer; Defendant also seeks to determine from the AUSA who worked with ICE, whether records in the United States Attorney's Office would have disclosed the ICE investigation had such records been checked.

Neither party cited to any case that specifically addresses the issue of whether an AUSA's knowledge is imputed to an investigative agent who is the affiant applying for a search warrant. The Court is not aware of any case on point although the case law clearly

---

[3] To the extent Defendant intends to cite *DeLeon* for the proposition that a warrant may be invalid where it fails to include information that an agent *should have* known, such an argument is without merit. *DeLeon* and *Franks* require the omission to be intentional or reckless – either on the part of the affiant or the agents who provided the information that formed the basis for the warrant.

does not permit the knowing omission of pertinent information by multiple agents involved in the search warrant application process. Moreover, an AUSA owes, as does every attorney, a duty of candor to the Court. AUSA Woolridge avowed to the Court that she had not been told of the ICE search by another AUSA, had not discussed the FBI investigation with that AUSA and that no file was opened in the U.S. Attorney's Office regarding the ICE investigation. Defendant seeks the name of the AUSA supervising the ICE investigation to challenge this avowal and presumably, to attempt to make a substantial showing of a reckless and intentional omission.

The identity of the AUSA who oversaw the ICE investigation is not necessary to determine the Defendant's right to a *Franks* hearing. As discussed in the following section, even if AUSA Woolridge did know of the ICE investigation and even if she were required to make that fact known in the warrant application presented to Magistrate Judge Pyle, the search warrant application on its face, including the omitted information, would have demonstrated probable cause for a second search of the Defendant's computer.

   2.   *Materiality of omissions*

"[I]n a case involving information omitted from an affidavit, the existence of probable cause is determined 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.'" *United States v. Troxel,* 564 F.Supp.2d 1235, 1247 (D. Kan. 2008), citing *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir. 1996). "Where an initial fruitless consent search dissipates the probable cause that justified a warrant, new indicia of probable cause must exist to repeat a search of the same premises pursuant to the warrant." *United States v. Bowling,* 900 F.2d 926, 932 (6th Cir. 1990).

The Defendant alleges that Judge Pyle would not have issued the search warrant knowing that ICE's on-site examination of the computer in April 2009 yielded no evidence of children pornography. The FBI affidavit, however, provided a sufficient explanation as to why an on-site examination such as the one conducted by ICE, could fail to locate child pornography present on a computer and the affidavit provided probable cause for a more in-

depth search of the same computer. The warrant described numerous ways that child pornography is hidden on computers and the highly technical process and expertise required to detect the pornography. The affidavit explained why a detailed off-site search was often necessary to detect pornography. In one portion of the affidavit, the affiant stated: "Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code embedded in the system as a 'booby trap' ), the controlled environment of a laboratory is essential to its complete and accurate analysis." (Affidavit, p. 7.) In another section, the affiant described how computer experts can recover during a complete off-site forensic evaluation, deleted images, including images deleted years earlier:

> It is also possible for computer experts to recover files or remnants of files months after they have been downloaded onto a hard drive and later deleted months or years later, but doing so requires a significant investment of time. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files or remnants of deleted files may reside in free space or slack space - that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space - for long periods of time before they are overwritten. Thus, the ability to retrieve residue of an electronic file is time consuming . . . . [O]ff -site search and analysis . . also makes recovery of illegal images of child pornography in the instant matter more likely given the information provided infra.

(Affidavit, p. 7.)

Thus, in contrast to multiple searches of the same premises for contraband, a preliminary search of a computer for images of child pornography may not dissipate probable cause for a second, more-detailed search of the same computer. Special Agent Campbell's affidavit demonstrates that, in light of the nature and complexity of computer storage of images and data, probable cause existed for a full forensic off-site examination of the Defendant's computer, even where an initial search was fruitless. ICE's prior search of Defendant's computer did not negate the finding of probable cause to search the Defendant's computer in August 2009. ICE's search was an-site preliminary search. There is no indication that the search employed the forensic evaluation sought by the FBI. The FBI

affidavit provided probable cause to repeat a search of the same computer off-site and in a more detailed manner.[4]

   *3.  Conclusion*

Considering the omitted information - ICE's prior fruitless review of the Defendant's computer - does not negate the finding of probable cause supporting the FBI's application for a search warrant for the Defendant's computer in August 2009. Therefore, a determination of whether the prior search was known to AUSAs involved in the two investigations and the disclosure of the identity of the AUSA involved in the ICE investigation need not be decided.

**RECOMMENDATION**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court: DENY Defendant's Motion to Suppress Evidence (Doc. 15) and DENY Defendant's request for disclosure of the identity of a certain AUSA. (Doc. 25.)

The parties have fourteen (14) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 10-1783-TUC-FRZ.**

DATED this 7th day of July, 2011.

Jennifer C. Guerin
United States Magistrate Judge

---

[4] The basis for the off-site search of the computer provided in the FBI application for warrant proved to be true. According to the government, images of child pornography found on the computer by the FBI pre-existed the ICE on-site preview.